## THE AZTEC.

(District Court, E. D. Pennsylvania. April 19, 1915.)

### No. 9.

ADMIRALTY ☞57—SUIT FOR BREACH OF CHARTER—SECURITY FOR RELEASE OF VESSEL.

In a suit by the charterer for breach of the charter party, by the refusal of performance by the owners, the amount of the security to which libelant is entitled cannot be affected by a subsequent offer of the owners to furnish the use of the vessel, which offer libelant was not bound to accept.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 452-478; Dec. Dig. ☞57.]

In Admiralty. Suit by the Interocean Transport Company against the steamer Aztec. On motions for order to fix amount of security and to dismiss libel. Motion to dismiss denied, and amount of security fixed.

Convers & Kirlin, of New York City, Edward F. Pugh, of Philadelphia, Pa. (J. Parker Kirlin and John M. Woolsey, both of New York City, of counsel), for libelant.

H. Alan Dawson, of Philadelphia, Pa., and Haight, Sandford & Smith, of New York City, for claimants.

---

DICKINSON, District Judge. Whatever the merits of the controversy between the parties concerned in this case may prove to be when the case is fully heard, the strong showing made by the libelant, both in respect to the flagrancy of the breach of contract on the part of the owners, and the amount of the damages sustained by the libelant, called in the first instance for a bond in a sum which would protect libelant in its claim. This was, of course, subject to the right of the owners to move for an order fixing the amount. Such motion was made. At the hearing of this motion the libelant's cause of action, its right to the process issued, its further right to security for its damages, and the reasonableness of the estimate of damage as made by libelant were all conceded. The motion was based solely on the proposition that the offer of the owners to permit libelant to have the use of their ship was in mitigation of libelant's damages, reducing them to an insignificant sum, and the bond required of the owners should be fixed in a nominal sum. To emphasize this the claimants made the above admissions arguendo. It is clear that the libelant is not obliged to accept of this promise, and that the court should not force its acceptance upon libelant. When this ship was chartered, the libelant had the promise of the owners to be allowed its use. That is all libelant had, and all it had bargained for, and therefore all to which it was entitled. When, however, the owners broke their contract (if they did break it), the libelant had no longer a contract with the owners, but a claim against them, and possibly against the ship, for the damages sustained by it for the breach of the contract. Libelant's further right was to have process issued and security in a reasonable sum for the payment of the damages which might be awarded.

The argument that the renewal by the owners of their broken promise put the libelant back exactly where it was before is more specious than sound. It affords the libelant no assurance (other than by the promise of the owners) that it will be saved from loss. Whatever ultimate effect these offers may have in mitigation of damages, the libelant's right is to security, and such a promise cannot be held to be the security which the law requires. The libelant's claim is very large in amount, and although it is given strong prima facie support by the present freight rates, the exaction of too large a bond would result in enforced idleness of the ship at a time when there is the most urgent need for her services. The court therefore expressed its willingness to lend an open ear to anything the claimants had to offer upon the question of the amount at which security should be fixed, and the hearing was continued for this purpose. The motion has come on to be heard before a full bench. It is now accompanied by a motion to dismiss and with a proposed amendment by the libelant of its libel. The original libel was in rem. The motion to dismiss is based upon the proposition that a ship is not subject to seizure for a claim for damages flowing from the breach of an executory contract of the owners. The amendment is to make the proceedings in personam, as well as in rem, with the usual attachment process against respondents not found within the jurisdiction. The allowance of the amendment makes the present discussion of the motion to dismiss unnecessary. We think

libelant has the right to amend and has leave to do so. Any security required, however, covers both features of the amended proceedings.

This brings us back to the only question before us, the fixing of the amount of the bond. The present market freight rates undoubtedly justify a high estimate of reasonably to be anticipated damages. Indeed, these high rates supply the charged motive for the breach of the charter party contract. There is nothing to show that libelant has any other prospect of redress than through a seizure of the ship. It is, however, likewise true that the present market conditions are exceptional. The fact which will ultimately, in all probability, determine the amount of damage, is the duration of the war. The market makes the best attempt possible to estimate this. We have examined with care all the supporting affidavits. This contract is for a long term. There is, as was to be expected, no real market rate for long term contracts. There is a market for short term contracts. There is also something of a market for long term contracts to begin in the future. The one assumes the war is likely to last; the other that it will be over during the life of the contract. These extremes give us something of a market guide.

Taking into account all the considerations involved, we fix the amount of the bond at $350,000.